UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
CHARLES BOYCE and NISHA MENON,
individually and on behalf of
S.E.B., L.R.M.B. and R.A.M.B.,                10 Civ. 9359 (NRB)
Infants,

                                                    **MEMORANDUM AND ORDER**
               Plaintiffs,

        - against -

E.A. TECHNOLOGIES, INC.,

               Defendant.
----------------------------------X

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


## I. Introduction

Pending before the Court are two motions.  Charles Boyce and Nisha Menon, individually and on behalf of their minor children (the "plaintiffs"), move for entry of a default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). E.A. Technologies, Inc. (the "defendant") moves to set aside the entry of default against it pursuant to Federal Rule of Civil Procedure 55(c).  For the reasons stated below, we deny plaintiffs' motion and grant defendant's motion.

## II. Background[1]

This action is a derivative contest to litigation between Charles Boyce ("Boyce"), one of the plaintiffs, and Edward

---

[1] The following facts are drawn from the submissions of the parties in connection with their respective motions as well as affidavits of service filed by plaintiffs.

Willner ("Willner"), the president of defendant, that was initiated in state court and involved at its outset a dispute over various agreements governing the disposition of Boyce's ownership interest in defendant and Boyce's employment by and consulting for defendant (the "state court action").  See Boyce v. Willner, et al., Index No. 650210/2009 (N.Y. Sup. Ct., N.Y. Cnty.); Reisen Decl. in Support of Pls.' Mot. for Default J. ("First Reisen Decl.") Ex. F.  During the state court action, it appears that defendant initially continued to pay for Boyce's healthcare insurance, which was a provision of the disputed employment and consulting agreement.  See Mem. of Law in Supp. of Def.'s Mot. to Vacate Default ("Def.'s Br.") 3; Mem. of Law in Supp. of Pls.' Mot. for Default J. ("Default J. Br.") 2-3. In response to Boyce's alleged argument in the state court action that defendant's continued payment for his healthcare insurance estopped defendant from claiming that he had breached the employment and consulting agreement, defendant decided in December 2010 to stop paying for the healthcare insurance.  See Def.'s Br. 3; Default J. Br. 2-3.[2]

According to the affidavit of Ellen Bernstein, a bookkeeper employed in defendant's office in Hauppauge, New York, on December 2, 2010, she contacted defendant's healthcare

_____

[2] We take no position on whether defendant was obliged to continue paying for Boyce's healthcare, an issue that the parties dispute.

representative and asked him to cancel Boyce's healthcare insurance. Bernstein Aff. in Supp. of Def.'s Mot. to Vacate Default ("Bernstein Aff.") ¶ 6. Bernstein testifies that at some later point she was advised by the healthcare representative that no claims had been made under the healthcare insurance since September 1, 2010 and that he would accordingly cancel coverage retroactively to that date in order to secure a premium refund for defendant. Id. at ¶ 7.[3] Having been advised that she should provide Boyce with an Election of COBRA Continued Coverage Form, Bernstein testifies that on December 3, 2010 she mailed the form to Boyce and that she subsequently received a certified mail receipt dated December 6, 2010. Id. at ¶¶ 8-9, Exs. C-D.[4] Bernstein finally testifies that she never received the completed form from Boyce, who was not enrolled in defendant's healthcare plan pursuant to COBRA. Id. at ¶ 10.

In their opposition to defendant's motion to set aside its default, plaintiffs contest whether this notice was timely and adequate under COBRA but do not suggest that plaintiffs did not actually receive the mailed form or that plaintiffs' counsel was only made aware of it in the wake of defendant's motion. See

---

[3] Plaintiffs have characterized the decision to make the cancellation of coverage retroactive rather differently. See, e.g., Am. Compl. ¶ 11 ("[defendant] requested, and [p]laintiffs' health-insurance carrier agreed, to apply this termination retroactively, such that [p]laintiffs were without health-insurance coverage as of early September, 2010").
[4] The certified mail receipt indicates that the form was received by a "Michael [Rodriguez]." Bernstein Aff. Ex. D. Neither defendant nor plaintiffs suggest that this fact is of any significance.

Pls.' Mem. of Law in Opp'n to Def.'s Mot. to Vacate Default ("Pls.' Opp'n") 11-12, 12 n. 46. It is thus troublesome that plaintiffs did not acknowledge receipt of this notice in their motion for default judgment in which they stated in language that in retrospect appears carefully chosen that "[defendant] did not provide [p]laintiffs with [any] notice under COBRA <u>prior</u> to its cancellation of their health care coverage." Default J. Br. 3 (emphasis added). We note that plaintiffs' failure to contest that they actually received the mailed form in their opposition to defendant's motion appears to also create a possible conflict with one of their affidavits in support of their motion for default judgment. <u>See</u> Menon Aff. in Supp. of Pls.' Mot. for Default J. ("Menon Aff.") ¶ 6 ("[o]n December 10, 2010 . . . [n]either my husband nor I had received any notice that our family's coverage would be terminated").

On December 10, 2010, Boyce's wife learned that defendant had cancelled Boyce's healthcare insurance that provided coverage for her and her husband as well as their children. Menon Aff. ¶ 6. Boyce's wife was informed that as a result of the retroactive cancellation, previously approved claims in excess of $10,000 for healthcare that had been provided to members of the family in October 2010 would be denied. <u>Id.</u> at ¶¶ 2-5, 7. While the family received healthcare insurance coverage following January 1, 2011 through Boyce's wife's

employer, certain healthcare that their children would have otherwise received in December 2010 was delayed.  Id. at ¶¶ 9- 10, 12.

On December 10, 2010, plaintiffs' counsel contacted defendant's counsel in the state court action and Willner regarding the retroactive cancellation of Boyce's healthcare insurance, stating that if defendant failed to "resolve this matter immediately . . . we will have no choice but to seek judicial relief."  First Reisen Decl. Ex. F.  On December 12, 2010, defendant's counsel in the state court action, still under the apparent impression that no claims had been made under the healthcare insurance since the retroactive cancellation date, offered that defendant would change the cancellation date to December 1, 2010 and pay the premiums due for the preceding months.  Id.  Plaintiffs' counsel was unsatisfied with this response, see id., and on December 15, 2010, Boyce brought suit against defendant, alleging violation of the Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. §§ 1161 et seq., as amended ("COBRA").  That same day, plaintiffs' counsel apparently emailed the original complaint to defendant's counsel in the state court action, requesting him to accept service, which request was not granted, though whether by a lack of response or a negative response is unclear.  Reisen Decl. in

Support of Pls.' Opp'n to Def.'s Mot. to Vacate Default ("Second Reisen Decl.") Ex. E; Pls.' Opp'n 4.

According to an affidavit executed by process server Nelson Acevedo ("Acevedo") on January 4, 2011 and filed on January 5, 2011 ("Acevedo Aff. #1"), Boyce served defendant with the original complaint on December 17, 2010 at 150 Motor Parkway, Suite 201, Hauppauge, New York 11788 by delivering his papers there to "Ellen Beinstein," who the affidavit identifies as an "authorized agent" of defendant.  On March 7, 2011, Boyce amended the original complaint, adding his wife, Nisha Menon, and their minor children as plaintiffs.  According to an affidavit executed by Acevedo on March 10, 2011 and filed on March 15, 2011 ("Acevedo Aff. #2"), plaintiffs served defendant with their amended complaint on March 8, 2011 at 150 Motor Parkway, Suite 201, Hauppauge, New York 11788 by delivering their papers there to "Ellen Beinstein," who the affidavit again identifies as an "authorized agent" of defendant.[5]  In their amended complaint, plaintiffs assert, "[defendant] intentionally and willfully violated COBRA by failing to inform and give timely and accurate notice to [p]laintiffs regarding continued coverage under COBRA after their health insurance was terminated."  Am. Compl. ¶ 20.  On April 21, 2011, the Clerk of

---

[5] Because defendant was "in default for failing to appear" and the amended complaint added additional plaintiffs, thereby presenting "new claim[s] for relief," plaintiffs were obliged to serve defendant pursuant to Federal Rule of Civil Procedure 4.  FED. R. CIV. P. 5(a)(2).

Court entered a default against defendant, which had as of that date neither answered nor otherwise moved with respect to the amended complaint.  On April 26, 2011, plaintiffs submitted a deficient application for entry of a default judgment.  In a telephone conversation on May 12, 2011, this Court's chambers advised plaintiffs' counsel of the deficiencies, which plaintiffs' counsel promised to correct.

Following a prompting inquiry from this Court's chambers on June 7, 2011, on June 17, 2011, plaintiffs filed their pending motion for default judgment, seeking $301,400 in penalties and $19,998.14 in attorney's fees and costs under COBRA.  Default J. Br. 6, 8.[6]  In particular, plaintiffs premised the award of penalties that they sought on the argument that "[t]he penalty period commences on the last day the employer could have legally provided the COBRA notice and runs until the violation ends or the end of [eighteen months]" and that "[i]n this case the penalty period extends from the date notice was late through the full eighteen months."  Id. at 6.  Though only seven months had elapsed between December 2010, the cancellation date, and June 2011 and only ten months between September 2010, the retroactive cancellation date, and June 2011, two time periods on which plaintiffs might have been understood to premise their claim,

---

[6] On June 17, 2011, plaintiffs' counsel mailed copies of plaintiffs' moving papers to defendant at 150 Motor Parkway, Suite 201, Hauppauge, New York, a step that we had recommended.  See First Reisen Decl. Ex. G.

plaintiffs did not explain how they arrived at eighteen months in their calculation of penalties.

On July 15, 2011, defendant's counsel filed a notice of appearance. Thereafter, on July 21, 2011, defendant's counsel indicated over the telephone in response to an inquiry from this Court's chambers that defendant was intending to file a motion to vacate the entry of default against it. On August 11, 2011, this Court wrote a letter to defendant's counsel on which plaintiffs' counsel was copied, indicating that defendant would be afforded a final opportunity to file a substantive motion within the next week. On August 23, 2011, defendant's counsel somewhat tardily informed this Court's chambers over the telephone that he was preparing such a filing. At our direction, on August 31, 2011, defendant submitted a pre-motion letter in which it argued that the entry of default against it should be set aside because (i) plaintiffs had improperly served defendant and (ii) a meritorious defense existed to the amended complaint. In compliance with our subsequent direction, on September 22, 2011, defendant finally filed the pending motion to set aside its default.

### III. Discussion

#### A. Service

Defendant argues in its moving papers that Bernstein is not an agent authorized to accept service on its behalf. See Def.'s

8

Br. 1.  In support of this argument, defendant includes in its

moving papers the affidavits of Bernstein and Willner.

Bernstein testifies, <u>inter alia</u>, that she is employed as a

bookkeeper, that she works largely alone but occasionally

alongside a part-time accountant in the defendant's office in

Hauppauge, and that "[a]lthough legal papers are occasionally

sent here, I am not authorized by [defendant] to accept service

of court papers."  Bernstein Aff. ¶¶ 1-3.  Willner testifies,

<u>inter alia</u>, that Bernstein "is not authorized to accept service

on behalf of [d]efendant."  Willner Aff. ¶ 4.

Plaintiffs argue in their papers opposing defendant's

motion that defendant was validly served with the amended

complaint.  <u>See</u> Pls.' Opp'n 3-5.  In support of their argument,

plaintiffs include in their opposing papers a further affidavit

of service executed by Acevedo on October 3, 2011 and filed on

October 7, 2011 ("Acevedo Aff. #3"), according to which

plaintiffs served defendant with the complaint on March 8, 2011

at 150 Motor Parkway, Suite 201, Hauppauge, New York 11788 by

delivering their papers there to Bernstein, who the affidavit

identifies as an "authorized agent" of defendant.  The affidavit

is identical to that which Acevedo executed on March 10, 2011

with two exceptions: (1) Bernstein's name is correctly spelled;

and (2) Acevedo states, "[r]ecipient expressly represented to me

9

that she is authorized to accept service of process on behalf of [defendant]."  Acevedo Aff. #3.[7]

Because we find that defendant has established "good cause" for setting aside the default entered against it pursuant to Federal Rule of Civil Procedure 55(c), we need not decide the question of whether service was proper.  See Pinaud v. Cnty. of Suffolk, 52 F.3d 1139, 1152 n. 11 (2d Cir. 1995) ("[t]he decision of the [d]istrict [c]ourt to avoid ruling upon the propriety of the service was wise, since the sound exercise of its discretion led it to conclude, correctly, that a default judgment was not justified in any event").

## B. Good Cause

Under Federal Rule of Civil Procedure 55(c), a "court may set aside an entry of default for good cause."  FED. R. CIV. P. 55(c).  In determining whether a defendant has established good

---

[7] In further support of their argument, plaintiffs bring to our attention that in an unrelated action in the United States District Court for the Eastern District of New York to which plaintiffs are not parties, an affidavit of service was executed on July 20, 2010 and filed on August 20, 2010, according to which defendant was served on July 20, 2010 at 150 Motor Parkway, Suite 201, Hauppauge,  New York 11788 by delivery of papers there to Bernstein who is identified as defendant's "bookkeeper" and "authorized ag[en]t."  Second Reisen Decl. Ex. A.  Looking beyond the affidavit of service that plaintiffs' counsel submitted, we take judicial notice that in this unrelated case defendant entered into a stipulation extending its time to answer the complaint on the condition that it waived the defenses of personal jurisdiction, insufficient process, and insufficient service of process under Federal Rules of Civil Procedure 12(b)(2), (4), and (5).  See Stipulation and Order, Axell Wireless Israel Ltd. v. E.A. Technologies, Inc., et al., No. 10 Civ. 3171 (LDW) (WDW) (E.D.N.Y. filed July 13, 2010) (Docket No. 5).  In a subsequent letter seeking an additional extension, defendant's counsel in this unrelated case specified that the prior stipulation was conditioned by waiver of "service defenses."  Letter, Axell, No. 10 Civ. 3171 (LDW) (WDW) (Docket No. 8).  Thus defendant's position on service involving Bernstein in the unrelated case appears consistent with its position here.

cause, we consider three factors: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993). In deciding this question which is "left to the sound discretion of [the] district court," we are mindful of the "oft-stated preference for resolving disputes on the merits." Id. at 95. In light of this preference, "doubts 'should be resolved in favor of the defaulting party.'" Powerserve Int'l, Inc. v. Lavi, 239 F.3d 508, 514 (2d Cir. 2001) (quoting Enron, 10 F.3d at 96). "Indeed, 'defaults are generally disfavored and are reserved for rare occasions.'" Sartor v. Toussaint, 70 Fed. Appx. 11, 13 (2d Cir. 2002) (quoting Enron, 10 F.3d at 96). Finally, while the same factors are analyzed to determine whether a default and a default judgment should be vacated, there is a "more forgiving standard for setting aside an administrative default," State Farm Mut. Auto. Ins. Co. v. Cohan, 409 Fed. Appx. 453, 456 (2d Cir. 2011).

We initially find that defendant was not willful in its default. A "court may find a default to have been willful where the conduct of counsel or the litigant was egregious and was not satisfactorily explained." S.E.C. v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998). Contrary to defendant's weak suggestion, see Def.'s Br. 5, it appears clear that defendant's counsel in the

state court action and also Willner had actual notice of this
action in December 2010 but that defendant did not make an
appearance until July 2011.  See Second Reisen Decl. Ex. D.
However, as defendant also asserts, it has actively litigated
against Boyce in the state court action during the time period
of this derivative contest.  See Def.'s Br. 5.  While plaintiffs
challenge that defendant and Willner "have employed every
conceivable litigation tactic available to delay or avoid the
entry of final judgment" in the state court action, even these
alleged dilatory tactics involved defendant filing a motion and
appearing for a hearing and thus actively involving itself in
the proceedings.  Pls.' Opp'n 8.  Moreover, it appears that the
underlying issue of liability for plaintiffs' healthcare
expenses incurred in October 2010 is being contested in the
state court action.  See Default J. Br. 8.  While defendant's
neglect of this case is irresponsible and unacceptable,
resolving all doubts in defendant's favor, as we must, we find
that in light of the parallel activity in the state court action
defendant's conduct is not so egregious that it rises to the
level of willfulness in this context.  This factor accordingly
does not weigh dispositively against setting aside the default.

Moving on to the prejudice, if any, that would follow for
plaintiffs from vacating defendant's default, we consider
whether the resulting delay will lead to "the loss of evidence,

12

create increased difficulties of discovery, or provide greater
opportunity for fraud and collusion." Davis v. Musler, 713 F.2d
907, 916 (2d Cir. 1983).  Plaintiffs forcefully argue that they
would be prejudiced were the default set aside because Willner
is in the midst of looting defendant's assets. See Pls.' Opp'n
8-11.  One of the pieces of evidence on which plaintiffs rely to
support their accusation is an affidavit that was submitted by
Willner in the state court action in December 2010.  See Second
Reisen Decl. Ex. N.  Whatever inferences this affidavit may
support, plaintiffs were in possession of it at the time they
sought an entry of default against defendant on April 21, 2011.
Nonetheless, after being advised that their initial application
for default judgment was deficient on May 12, 2011, plaintiffs
waited over a month before moving for default judgment on
June 17, 2011 and only after receiving a prompting inquiry from
this Court's chambers on June 7, 2011.  While plaintiffs direct
our attention to further evidence that they argue suggests
Willner's alleged looting activities have continued, this prior
delay in seeking a default judgment influences our assessment of
plaintiffs' real perception of the prejudice that faces them as
well as their level of interest in this case, which is
derivative of the state court action.  We accordingly find that
whatever prejudice is supported by the record before us is
insufficient to warrant denial of the defendant's motion to set

13

aside its default. In any event, given the state court action, Boyce clearly has a remedy if there is improper conduct related to defendant's assets.

We now consider whether defendant has raised a meritorious defense, the factor that drives our analysis here. "[S]uch a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." Enron, 10 F.3d at 98. The proffered defense "need not be ultimately persuasive at this stage" but rather need only "give the factfinder some determination to make." Am. Alliance Ins. Co. v. Eagle Ins. Co., 92 F.3d 57, 61 (2d Cir. 1996) (internal quotation marks omitted). Here, plaintiffs have filed suit and sought a default judgment against defendant for its alleged failure to provide them with notice of the termination of their healthcare insurance and their eligibility for continuation coverage in violation of COBRA. See Am. Compl. ¶ 20. However, defendant asserts, and plaintiffs do not contest, that it did provide them with notice. Instead of denying receipt of this notice, which was apparently mailed the day following defendant's termination of plaintiffs' healthcare insurance, plaintiffs argue that the notice was untimely and inadequate. See Pls.' Opp'n 11-12.

As to timeliness, the obligation to provide notice of eligibility for continuation coverage under COBRA is triggered on the "date of the qualifying event."  29 U.S.C. § 1166(a)(2). Though it is not clear, it appears from their opposition papers to defendant's pending motion that plaintiffs are at least now arguing that the termination of plaintiffs' health insurance was a "qualifying event," 29 U.S.C. § 1163, and that defendant's obligation to provide notice under COBRA was not timely fulfilled.  See Opp'n 11-12.  If, as we understand, it is not disputed that defendant's initial effort to cancel plaintiffs' health insurance occurred on December 2, 2010, we are puzzled as to how notice should have been sent months earlier.  We acknowledge that this question will certainly benefit from further briefing from the parties but find at this stage that defendant has presented a complete defense on timeliness.

As to adequacy, plaintiffs argue that defendant's notice was deficient because it was addressed only to Boyce and not also his wife and their children, who are also "qualified beneficiar[ies]" entitled to notice, 29 U.S.C. § 1166(a)(4), and furthermore because the information that it provided was inadequate. See Opp'n 12 n. 46.  In response, defendant draws our attention to authority that suggests whether its notice was adequate is a question of good faith.  See Def.'s Reply Mem. of Law in Further Supp. of Mot. to Vacate Default 4.  See also

15

Ehrlich v. Howe, 848 F. Supp. 482, 490 (S.D.N.Y. 1994) (adopting position that "good faith efforts to comply with COBRA notice requirements are sufficient for compliance with the statute"). Again, we acknowledge that this question will certainly benefit from further briefing from the parties but find at this stage that defendant has presented a complete defense on adequacy.

In large part due to defendant's meritorious defense, we find that it has demonstrated "good cause" sufficient for us to set aside its default. Going forward, it is fairly clear that this case--whatever its merit--is a tactical thrust in an underlying business dispute being litigated in state court. While parties are free to file such actions, courts have the right--if not the duty--to demand that parties who wish to use their forum proceed with candor and competence as well as dedication to their own cause. As the record here demonstrates, neither counsel have met that standard. Both counsel are put on notice that this Court's tolerance for their inattention and carefully crafted (but misleading) submissions has been exhausted.

## IV. Conclusion

For the reasons stated above, we deny plaintiffs' motion and grant defendant's motion. Accordingly, the Clerk of the Court is directed to vacate the entry of default against defendant. Further, defendant must file an answer to

plaintiffs' amended complaint in twenty-one (21) days from the date of this Memorandum and Order.   Defendant must also understand that there will be no extension of this deadline except by joint stipulation of the parties and that no further relief will be forthcoming in the event that it once more defaults.[8]


Dated:     New York, New York
           January 18, 2012

                                    _____
                                       NAOMI REICE BUCHWALD
                                       UNITED STATES DISTRICT JUDGE

---

[8] We do not expect that defendant will choose to persist in its argument that service was improper but instead anticipate that defendant will voluntarily waive service and proceed to litigate its position on the merits.

17

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

Attorneys for Plaintiffs:
Alex G. Reisen, Esq.
Lisa C. Solbakken, Esq.
Arkin Kaplan Rice LLP
590 Madison Avenue, 35th Floor
New York, NY 10022

Attorneys for Defendant:
Timothy B. Cummiskey, Esq.
Goetz Fitzpatrick LLP
One Penn Plaza, Suite 4401
New York, NY 10119